**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EBONY MONTGOMERY** | : | **CIVIL ACTION** |
| *Plaintiff,* | : | |
| | : | |
| **v.** | : | **No. 26-cv-1038** |
| | : | |
| **ALLSTATE INSURANCE COMPANY,** | : | |
| *Defendant.* | : | |

**MEMORANDUM**

**KENNEY, J.**                                                                                    **APRIL 30, 2026**

On January 21, 2026, Plaintiff Ebony Montgomery filed suit against Defendant Allstate Insurance Company in connection with an insurance dispute in the Court of Common Pleas of Philadelphia County. *See* ECF No. 12-4. Plaintiff asserted two causes of action for breach of contract and bad faith. *Id*. ¶¶ 1–23. After removing the case to federal court pursuant to 28 U.S.C. § 1332(a), *see* ECF No. 1 ¶ 11, Defendant moved to dismiss Plaintiff's Complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6) (the "Motion to Dismiss"), and also moved to strike certain paragraphs from the Complaint pursuant to Federal Rule of Civil Procedure 12(f) (the "Motion to Strike"). *See* ECF No. 12. Plaintiff opposes dismissal and Defendant's Motion to Strike. *See* ECF No. 14. For the reasons set forth below, the Court will **DENY** Defendant's Motion to Dismiss (ECF No. 12), and **DENY** Defendant's Motion to Strike (ECF No. 12).

I.    **BACKGROUND**

   A.  **Factual Background**

The Court draws the following factual allegations from Plaintiff's Complaint and assumes them to be true at the motion-to-dismiss stage. *See City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). In March 2007, Plaintiff Ebony Montgomery purchased real property located at 5213 Duffield Street, Philadelphia, Pennsylvania, 19124-1322

(the "Property"). ECF No. 12-4 ¶¶ 1, 4, 17. Around the time of her purchase, she obtained a homeowners insurance policy from Defendant Allstate Insurance Company to insure the Property. *Id*. ¶¶ 3–4; *see also* ECF No. 12-5. She initially "lived in the [P]roperty as her residence." ECF No. 12-4 ¶ 17. In 2014, Plaintiff moved out of the Property and started renting it to tenants. *Id*. ¶ 18. She informed Defendant when she moved, so that it "would have her updated address." *Id*. ¶ 19. From the time that she bought "the [P]roperty in 2007 through the date of loss in 2025," she paid all premiums for the insurance policy and Defendant accepted the premiums. *Id*. ¶¶ 4, 18.

On or about August 11, 2025, there was a fire at the Property, which was allegedly started by a cigarette. *Id.* ¶ 5. As a result, the Property suffered substantial fire and water damage throughout the whole building. *Id.* Afterwards, "[a] claim was promptly submitted under Allstate claim number 0802313833." *Id.* ¶ 6. Plaintiff's insurance policy "was in effect on the date of loss." *Id.* ¶ 3. Under the terms of Plaintiff's policy, a fire that results in substantial damage is a covered loss. *Id.* ¶ 7. Plaintiff alleges that she suffered minimum damages in the amount of $213,376.92, which encompasses damages for emergency demolition and estimated structural repairs. *Id*. ¶ 8.

On October 15, 2025, Defendant sent Plaintiff a denial letter and refused to compensate her for the damage to her Property. *Id*. ¶¶ 9, 11. The letter did "not state any specific reason for [the] denial"; instead, it stated that Defendant was "denying coverage followed by the definitions page of the policy." *Id*. ¶ 9. Plaintiff believes that she was denied coverage on the basis that the Property "was not owner-occupied at the time of loss." *Id*. ¶ 14.

**B. Procedural History**

After coverage was denied, on January 21, 2026, Plaintiff filed a Complaint in the Court of Common Pleas of Philadelphia County, asserting two causes of action for breach of contract

2

and bad faith. *See id.* ¶¶ 1–23. Plaintiff sought damages resulting from Defendant's denial of her claim, in addition to punitive damages pursuant to 42 Pa.C.S.A. § 8371. *Id.* at 5, 6.

On February 18, 2026, Defendant removed the action to the U.S. District Court for the Eastern District of Pennsylvania on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a). *See* ECF No. 1 ¶ 11. On March 19, 2026, Defendant moved to dismiss both counts in the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* ECF No. 12. In addition, Defendant moved to strike paragraphs 16, 20, 21, and 22 from the Complaint pursuant to Federal Rule of Civil Procedure 12(f). *Id.* On April 2, 2026, Plaintiff filed an Opposition to Defendant's Motion to Dismiss and Motion to Strike. *See* ECF No. 14. Defendant's Motion to Dismiss and Motion to Strike are before the Court.

## II.   LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint. "To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When evaluating a motion to dismiss for failure to state a claim, district courts "accept all factual allegations as true, [and] construe the complaint in the light most favorable to the plaintiff." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (internal quotations and citations omitted). A plaintiff is not required to plead "detailed factual allegations," but Federal Rule of Civil Procedure 8(a)(2) "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Moreover, the Court is required to "draw all reasonable inferences in favor of the plaintiff," but may "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *City of Cambridge*

*Ret. Sys.*, 908 F.3d at 878 (citation omitted).  Courts may also consider "a document integral to or explicitly relied upon in the complaint," *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotations and citation omitted) (emphasis omitted), in addition to "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *see also Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## III.   <u>DISCUSSION</u>

Defendant moved to dismiss Plaintiff's breach of contract and bad faith claims for failure to state a claim.  *See* ECF No. 12.  In addition, Defendant moved to strike a handful of paragraphs from the Complaint.  *Id.*  For the following reasons, the Court will deny Defendant's Motion to Dismiss because Plaintiff alleged sufficient facts demonstrating a plausible entitlement to relief as to both claims.  The Court will also deny Defendant's Motion to Strike certain paragraphs from the Complaint because Defendant failed to establish that the paragraphs contain redundant, immaterial, impertinent, or scandalous material, or that they cause prejudice to Defendant.

### A.  Plaintiff Stated a Plausible Breach of Contract Claim

Defendant moved to dismiss Plaintiff's breach of contract claim under Rule 12(b)(6), and principally argues that there was no breach because the plain language of the insurance policy forecloses coverage as a matter of law.  *See* ECF No. 12-1 at 3–4.[1]  In her Opposition, Plaintiff

---

[1] Defendant attached a full copy of the insurance policy to its Motion to Dismiss, *see* ECF No. 12-5, and Plaintiff attached a copy of the Declarations page of the policy to her Complaint.  *See* ECF No. 12-4 ¶ 3; *id.* at 12–14.  The Court can consider the policy in evaluating Defendant's Motion to Dismiss because it is an integral document, Plaintiff relied upon the policy in her Complaint, and her claims are based on it.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426; *Pension Benefit Guar. Corp.*, 998 F.2d at 1196.

argues that Defendant's conduct gives rise to a breach of contract claim because she plausibly alleged that she had a valid insurance policy and suffered a covered loss to her Property for which Defendant refused to pay.  *See* ECF No. 14-2 at 12.

To establish a breach of contract claim under Pennsylvania law, Plaintiff must plead factual allegations demonstrating "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages."  *Ware v. Rodale Press, Inc.,* 322 F.3d 218, 225 (3d Cir. 2003) (quoting *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)); *see also Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. L. Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016) (same).

Here, the parties do not dispute that Plaintiff adequately pleaded the first and third elements of a breach of contract claim.  As to the first element, Plaintiff identified an insurance policy that Defendant issued her, which sets forth the essential terms of their contractual relationship, including the scope and conditions of coverage.  *See* ECF No. 12-4 ¶ 3; ECF No. 12-5.  It is well-established that "insurance policies are considered contracts."  *Transamerican Off. Furniture v. Travelers Prop. & Cas.*, 222 F. Supp. 2d 689, 691 (E.D. Pa. 2002).  As to the third element, if there was a breach, Plaintiff sufficiently alleged resultant economic damages in the minimum amount of $213,376.92, which includes the costs of emergency demolition and repairing her home from fire and water damage.  *See* ECF No. 12-4 ¶¶ 5, 8, 11.

The main dispute centers around whether Plaintiff adequately pleaded the second element—breach of a duty imposed by the insurance policy.  After reviewing her Complaint, the

---

The insurance policy contains a choice of law provision, which provides that the "policy is issued in accordance with the laws of Pennsylvania" and that "the laws of Pennsylvania shall govern any and all claims or disputes in any way related to this policy."  *See* ECF No. 12-5 at 46.  The parties do not dispute that Pennsylvania law governs.

Court finds that Plaintiff adequately pleaded facts demonstrating that a breach may have occurred. Plaintiff alleged that from the time she bought "the [P]roperty in 2007 through the date of loss in 2025," she paid all premiums for her insurance policy and "was fully compliant with the terms of the policy issued by [Defendant] both before and after the loss." *Id.* ¶¶ 4, 12. After her Property suffered substantial fire and water damage in 2025, she submitted a claim for coverage. *Id.* ¶¶ 5–6. Plaintiff further alleged that Defendant breached its duties by issuing her a denial letter and by failing to compensate her because "[a] fire resulting in extensive damage is clearly a loss covered by the policy." *Id.* ¶¶ 7, 9–11. Accepting Plaintiff's factual allegations as true and construing all reasonable inferences in Plaintiff's favor—as the Court is required to do at this stage—Plaintiff sufficiently alleged that Defendant breached the insurance policy by refusing to provide coverage for the damage to her Property. *See, e.g.*, *Allen v. Protective Ins. Co.*, No. 24-cv-3194, 2024 WL 4304793, at *3 (E.D. Pa. Sept. 26, 2024) (finding that a plaintiff sufficiently pleaded a breach of contract claim where the plaintiff alleged that he bought an insurance policy and that "the insurance policy entitles him to certain . . . benefits which have gone unpaid"); *Travis v. State Auto Mut. Ins. Co., Inc.*, No. 21-cv-5395, 2023 WL 2163975, at *4 (E.D. Pa. Feb. 22, 2023) (finding that a breach of contract claim was adequately pleaded where a plaintiff alleged that the defendants breached by failing to provide "coverage[] as promised" and by "violat[ing] contractual obligations that were entered into when [the defendants] sold the [p]olicies to her").

In support of its Motion, Defendant argues that the terms of the policy foreclose coverage of Plaintiff's damages as a matter of law "at the time of the alleged loss" because Plaintiff admitted that she did not reside in the Property as required by the policy. ECF No. 12-1 at 4. Defendant's attempt to frame the issue of whether Plaintiff sufficiently pleaded a breach as raising a clear-cut question of contractual interpretation based on the definitions in the policy fails at this stage of the

proceedings.   Defendant ignores several other provisions of the insurance policy that may introduce ambiguity and may have a bearing as to how the purported residency condition is interpreted.   *See Prudential Prop. & Cas. Ins. Co. v. Sartno*, 903 A.2d 1170, 1174 (Pa. 2006) ("Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insurer and against the insurer, the drafter of the agreement." (citation omitted)); *McMillan v. State Mut. Life Assurance Co. of Am.*, 922 F.2d 1073, 1075 (3d Cir. 1990) (same).   Take, for instance, the following provision: "*In reliance on the information **you** have given us*, **Allstate** agrees to provide the coverages indicated on the Policy Declarations.   In return, **you** must pay the premium when due and comply with the policy terms and conditions, *and inform **us** of any change in title, use or occupancy of the **residence premises***."   ECF No. 12-5 at 20 (emphasis added).   Here, Plaintiff alleged that she "was fully compliant with the terms of the policy issued by [Defendant] both before and after the loss" and *did* "inform[]" Defendant of a change in occupancy.   *See* ECF No. 12-4 ¶¶ 12, 19.   Nevertheless, Defendant "continued to accept premiums for the policy" and renewed it.   *Id.* ¶ 19; *see also id.* at 12.   The Court can thus draw the reasonable inference that Plaintiff fulfilled her obligations under the terms of the contract.

As another example, the policy provides that "[t]he **residence premises** may be vacant or unoccupied for any length of time, except where a time limit is indicated in this policy for specific perils."   ECF No. 12-5 at 32.   Accordingly, "it is difficult to reconcile Allstate's position that the policyholder must be living on the premises with a clause that provides the Property may be vacant or unoccupied for any length of time."   *Ionata v. Allstate Ins. Co.*, No. 15-cv-6561, 2016 WL 4538756, at *3 (E.D. Pa. Aug. 30, 2016); *see also Allstate Vehicle & Prop. Ins. Co. v. Harris*, Nos. 20-cv-741 & 20-cv-1285, 2022 WL 4586135, at *7 (E.D. Pa. Sept. 29, 2022 (concluding that Allstate's "residence requirement" was ambiguous).   Moreover, within the section of the policy

defining "**Business**", the policy provides that "[r]ental of **your residence premises** is not considered a **business** when: 1) it is rented occasionally for residential purposes; 2) a portion is rented to not more than two roomers or boarders; or 3) a portion is rented as a private garage." ECF No. 12-5 at 19.  As the *Ionata* court explained when addressing the same provision, the policy appears to "explicitly endorse[] the policyholder's right to relinquish the premises to third parties," which "is flatly inconsistent with Allstate's premise that the insured's physical presence is a prerequisite for coverage."  2016 WL 4538756, at *3.

At this time, the Court is not making a determination as to whether or not the policy is ambiguous.  However, these examples are used to illustrate that whether the loss was or was not covered as a matter of law is an argument that is more appropriately reserved for a later stage of these proceedings with the benefit of fuller briefing on the issue.  *See id.* (noting that a similar residency argument by the same Defendant had "both the force of common sense and a certain superficial appeal[,] [b]ut a review of the Policy in its entirety, and a closer focus on the language of various provisions, calls into question whether its terms can *only* be understood to require physical presence at the Property").[2]  When evaluating a motion to dismiss, all the Court is tasked

---

[2] In her Opposition, Plaintiff argues that principles of waiver and estoppel may support her position, but require discovery before they can be resolved.  *See* ECF No. 14-2 at 4–12.

It is well-settled that "conditions going to the coverage or scope of a policy of insurance . . . may not be waived by implication from the conduct or action of the insurer."  *Wasilko v. Home Mut. Cas. Co.*, 232 A.2d 60, 63 (Pa. 1967).  In other words, "implied waiver" cannot be used "to bring within the coverage of an insurance policy[] risks that are expressly excluded therefrom."  *Id.*; *see also O'Hara v. MetLife Ins. Co. USA*, No. 3477 EDA 2018, 2019 WL 4303034, at *6 (Pa. Super. Ct. 2019) (same).  To support a finding of implied waiver, "the evidence must show that acts of the insurance company constituted a voluntary, intentional relinquishment of a known right and the insurer had full knowledge of all pertinent facts."  *Wasilko*, 232 A.2d at 63.

In addition, for the doctrine of equitable estoppel to apply, a plaintiff must allege facts demonstrating (1) "misleading words, conduct, or silence by the party against whom the estoppel is asserted;" (2) "unambiguous proof of reasonable reliance upon the misrepresentation by the

with deciding is whether Plaintiff's breach of contract claim has "facial plausibility," such that the factual allegations "allow the [C]ourt to draw the reasonable inference that the [D]efendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Here, the factual allegations that Plaintiff pleaded in support of her breach of contract claim sufficiently surpass this bar, so the Court will deny Defendant's Motion to Dismiss Plaintiff's breach of contract claim.

### B. Plaintiff Stated a Plausible Bad Faith Claim

In addition to a breach of contract claim, Plaintiff asserted a statutory bad faith claim under 42 Pa.C.S.A. § 8371.  *See* ECF No. 12-4 ¶¶ 13–23.  Defendant contends that this claim, too, should be dismissed because it amounts to a coverage disagreement and "consists of bald legal conclusions and boilerplate allegations of [b]ad [f]aith," rather than factual allegations that entitle Plaintiff to relief.  ECF No. 12-1 at 10.  In her Opposition, Plaintiff argues that she adequately pleaded a bad faith claim that "supports a reasonable inference that [Defendant's] denial was not the product of a reasonable investigation."  ECF No. 14-2 at 19.  According to Plaintiff, Defendant

---

party asserting the estoppel; and" (3) "the lack of a duty to inquire on the party asserting the estoppel."  *Chester Extended Care Ctr. v. Commonwealth Dep't of Pub. Welfare*, 586 A.2d 379, 382 (Pa. 1991).  In the context of an insurance policy, "there must be such conduct on the part of the insurer as would, if the insurer were not estopped, operate as a fraud on some party who has taken or neglected to take some action to his own prejudice in reliance thereon."  *Wasilko*, 232 A.2d at 63 (citation omitted).

The Court need not decide at this time whether there was an express or implied waiver, or whether Defendant should be equitably estopped from raising the insurance policy's residency condition, because those analyses are more appropriately undertaken after further development of the record.

As to Plaintiff's invocation of the doctrine of promissory estoppel, that doctrine is of little assistance to Plaintiff because under Pennsylvania law, a plaintiff generally cannot assert a claim for promissory estoppel when there is a valid and enforceable contract governing the same subject matter.  *See, e.g.*, *Carlson v. Arnot-Ogden Mem'l Hosp.*, 918 F.2d 411, 416 (3d Cir. 1990) (finding that where "the parties formed an enforceable contract, relief under a promissory estoppel claim is unwarranted").

accepted her premiums, maintained her existing insurance policy, and did not act on information in its possession that it eventually used to deny her coverage. *See id.*

To recover on a bad faith claim under 42 Pa.C.S.A. § 8371, a plaintiff must demonstrate "that the insurer did not have a reasonable basis for denying benefits under the policy and that the insurer knew or recklessly disregarded its lack of reasonable basis in denying the claim." *Wolfe v. Allstate Prop. & Cas. Ins. Co.*, 790 F.3d 487, 498 (3d Cir. 2015) (citing *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994)); *see also Rancosky v. Wash. Nat'l Ins. Co.*, 170 A.3d 364, 377 (Pa. 2017). In the insurance context, bad faith has been defined to include "[a] frivolous or unfounded refusal to pay proceeds of a policy [or] . . . a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will[.]" *Smith v. State Farm Mut. Auto. Ins. Co.*, 506 F. App'x 133, 136 (3d Cir. 2012) (citation omitted)). "[M]ere negligence or bad judgment" does not amount to bad faith on the part of the insurer. *Id.* (citation omitted); *Nelson v. State Farm Fire & Cas. Co.*, No. 23-1793, 2024 WL 1132765, at *5 (3d Cir. 2024) ("Bad faith conduct also includes lack of good faith investigation into fact[s], and failure to communicate with the claimant." (citation omitted)). "Bad faith claims are fact specific and depend on the conduct of the insurer *vis à vis* the insured." *Condio v. Erie Ins. Exch.*, 899 A.2d 1136, 1143 (Pa. Super. Ct. 2006).

Plaintiff adequately pleaded factual allegations demonstrating entitlement to relief for her bad faith claim. "At the pleading stage, a plaintiff states a sufficient claim if the complaint avers basic facts regarding the insurance policy, loss, and denial of the claim, as well as allegations that the insurer acted unreasonably." *Kirschner v. State Farm Fire & Cas. Co.*, No. 23-cv-993, 2023 WL 7167568, at *5 (E.D. Pa. Oct. 31, 2023). Here, Plaintiff alleged that she bought the Property in 2007, "obtained the current Allstate property insurance policy[,]" and "lived in the [P]roperty

10

as her residence" for several years. ECF No. 12-4 ¶ 17. She paid all her insurance premiums through the date of loss in 2025, and Defendant accepted her payments. *Id.* ¶¶ 4, 18. She submitted "significant evidence of a covered fire loss which was denied by [Defendant]." *Id.* ¶ 23. When Defendant denied her claim for coverage, it did "not specify a reason for the denial" and referenced "technical policy language to avoid paying" for the fire damage. *Id.* ¶¶ 14–15. Plaintiff thus believes that Defendant denied her claim "because the [P]roperty was not owner-occupied at the time of loss." *Id.* ¶ 14. Plaintiff further alleged that she did not misrepresent anything with respect to the policy and "informed [Defendant] when she moved so that [it] would have her updated address." *Id.* ¶¶ 19, 22. Therefore, Defendant "knew or should have known she was no longer living at the [P]roperty yet continued to accept premiums for the policy" and renew the policy. *Id.* ¶ 19. Moreover, "[a] landlord rental policy is not more expensive" than a homeowners policy, so "[t]here [was] no financial gain" for Plaintiff in "not changing policies." *Id.* ¶ 22.

Contrary to Defendant's contention that Plaintiff's bad faith claim is devoid of facts and is bolstered only by "boilerplate allegations," *see* ECF No. 12-1 at 10, Plaintiff's bad faith claim consists of sufficient factual allegations such that the Court can draw the reasonable inference that Defendant may have acted unreasonably in denying her claim. *See, e.g., 1009 Clinton Props., LLC v. State Farm Fire & Cas. Co.*, No. 18-cv-5286, 2019 WL 1023889, at *6 (E.D. Pa. Mar. 4, 2019) (denying a motion to dismiss a bad faith claim where the "factual allegations, in conjunction with the allegations pertaining to bad faith conduct, support the reasonable inference that [d]efendant knew it lacked a reasonable basis to deny [p]laintiff's claim"); *St. Clair v. State Farm Fire & Cas. Co.*, No. 15-cv-0538, 2015 WL 2118975, at *3 (E.D. Pa. May 6, 2015) (finding that a plaintiff sufficiently alleged that defendant "lacked a reasonable basis for denying her claim" where her allegations established that defendant refused to compensate her for covered fire

damage).   The crux of the factual allegations supporting Plaintiff's bad faith claim is that Defendant "took no action to cancel the policy, modify coverage, or advise that the disclosed condition would affect coverage[,]" even though Plaintiff informed Defendant that she had moved. ECF No. 14-2 at 4; *see also id.* at 8, 19.  Instead, Defendant purportedly continued to accept her premium payments and renew her existing insurance policy.  *Id.* at 4, 8.  Defendant then denied coverage based "on information it had long possessed without acting upon it." *Id.* at 14.  Therefore, the allegations in Plaintiff's Complaint raise an inference that Defendant may have acted unreasonably in denying her coverage when considering the duties that were owed to Plaintiff, including the duty of good faith and fair dealing.  *See Dercoli v. Pa. Nat'l Mut. Ins. Co.*, 554 A.2d 906, 909 (Pa. 1989) (explaining that the duty of good faith and fair dealing "includes the duty of full and complete disclosure as to all of the benefits and every coverage that is provided by the applicable policy or policies along with all requirements"); *But see Kilmore v. Erie Ins. Co.*, 595 A.2d 623, 627 (Pa. Super. Ct. 1991) ("declin[ing] to extend the duties of an insurer to provide ongoing advice concerning the limits of its coverage").[3]  At this stage, Plaintiff has sustained her

---

[3] Under Pennsylvania law, an insurer's duty of good faith and fair dealing does not require "hand holding and substituted judgment." *Kilmore*, 595 A.2d at 626; *see also Treski v. Kemper Nat. Ins. Cos.*, 674 A.2d 1106, 1114–15 (Pa. Super. Ct. 1996).  But if an "insurer undertakes to advise and counsel the insured in the insured's claim for benefits[,] . . . the insurer has a duty to inform the insured of all benefits and coverage that may be available and of any potential adverse interest pertaining to the insurer's liability under the applicable policy."  *Dercoli*, 554 A.2d at 909; *see also Kilmore*, 595 A.2d at 626 (discussing the "duty enunciated in *Dercoli*" (citation omitted)).

Here, Plaintiff's allegations support the reasonable inference that Defendant acted in bad faith in denying her coverage in part because she alleged that she "informed" Defendant when she moved and did not engage in any "misrepresentation" with respect to the policy.  ECF No. 12-4 ¶¶ 19, 22. Accepting those allegations as true, a question appears to be raised as to what Defendant *did* in response to Plaintiff's decision to "inform[]" Defendant of a change in the status quo.  *Id.* ¶ 19.

As explained above, *see supra* at 7, the insurance policy provides the following: "*In reliance on the information **you** have given us*, **Allstate** agrees to provide the coverages indicated on the Policy Declarations.  In return, **you** must pay the premium when due and comply with the policy terms

12

burden of pleading sufficient facts that "state a claim to relief that is plausible on its face" in connection with her bad faith claim. *Iqbal*, 556 U.S. at 678 (citation omitted). Furthermore, bad faith determinations often involve "a fact-intensive inquiry, requiring development of the record." *Zimmerman v. State Farm Mut. Auto. Ins. Co.*, No. 11-cv-1341, 2011 WL 4840956, at *3 (M.D. Pa. Oct. 12, 2011). The Court will thus deny Defendant's Motion to Dismiss Plaintiff's bad faith claim.

### C. Defendant's Motion to Strike Is Denied

Finally, Defendant also moved to strike paragraphs 16, 20, 21, and 22 from the Complaint on the basis that they contain redundant, immaterial, and/or scandalous material. *See* ECF No. 12-1 at 4–6. In response, Plaintiff argues that the allegations Defendant is attempting "to strike relate directly to Plaintiff's theory that [Defendant] knowingly continued the policy, accepted premiums despite possessing relevant information, and engaged in conduct supporting a bad faith claim." ECF No. 14-2 at 13.

Motions to strike are determined "solely on the basis of the pleadings." *Perma-Liner Indus. v. U.S. Sewer & Drain, Inc.*, 630 F. Supp. 2d 516, 526 (E.D. Pa. 2008). Under Federal Rule of Civil Procedure 12(f), a court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Content is immaterial when it has no essential or important relationship to the claim for relief." *Lee v. Eddystone Fire & Ambulance*, No. 19-cv-3295, 2019 WL 6038535, at *2 (E.D. Pa. Nov. 13, 2019) (citation omitted). Moreover,

---

and conditions, *and inform **us** of any change in title, use or occupancy of the **residence premises**.*" ECF No. 12-5 at 20 (emphasis added). Plaintiff alleged in her Complaint that she did just that—i.e., "informed Allstate when she moved"—and "was fully compliant with the terms of the policy." ECF No. 12-4 ¶¶ 12, 19. Accordingly, discovery may resolve whether Plaintiff further questioned Defendant as to any impact to her coverage, what exactly Defendant was aware of, what was communicated to Plaintiff, and whether Defendant failed to adhere to its implied duty of good faith and fair dealing.

"[c]ontent is impertinent when it does not pertain to the issues raised in the complaint[,]" and content is scandalous if it "casts a derogatory light on" a party. *Id.* (citation omitted). While courts have discretion to "clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters[,]" *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002), "[m]otions to strike are generally disfavored" and are considered a "drastic remedy to be resorted to only when required for the purposes of justice." *Brown v. LM Gen. Ins. Co.*, No. 21-cv-2134, 2021 WL 3809075, at *2–3 (E.D. Pa. Aug. 26, 2021) (citation omitted). Accordingly, motions to strike are typically "denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issue[s]." *Perma-Liner Indus.*, 630 F. Supp. 2d at 526 (citation omitted).

The Court will deny Defendant's Motion to Strike paragraphs 16, 20, 21, and 22 from the Complaint. These paragraphs do not rise to the level of containing "redundant, immaterial, impertinent, or scandalous" material, such that they should be stricken. Fed. R. Civ. P. 12(f). Instead, they pertain to and provide relevant context for Plaintiff's bad faith claim. For example, Plaintiff alleged in paragraph 22 that a "landlord rental policy is not more expensive" than a homeowners policy. ECF No. 12-4 ¶ 22. Plaintiff thus dispelled the idea that she had an improper financial motive to maintain the same policy, which speaks directly to her bad faith claim. Likewise, paragraphs 16 and 21 provide additional background for the underlying theory of Plaintiff's bad faith claim and are not "so unrelated" to her claim "as to be unworthy of any consideration." *Kirschner*, 2023 WL 7167568, at *2 (citation omitted). Rather, allegations that Defendant was on notice that policyholders frequently move and assume that their coverage continues to apply may be relevant to Defendant's conduct and knowledge here. *See id.* at *3 ("Allegations that [d]efendant has engaged in a general business practice of violating state

14

insurance law could be relevant to [p]laintiffs' assertion that [d]efendants were on notice regarding criticized claims handling practices that underscore the bad faith claim here."). While paragraph 20 is arguably a legal conclusion that the Court does not need to accept as true, it does not follow that the paragraph should be stricken. Furthermore, Defendant failed to demonstrate that maintaining these paragraphs will cause prejudice to it. The "drastic remedy" of striking allegations from Plaintiff's Complaint simply is not warranted. *Brown*, 2021 WL 3809075, at *2 (citation omitted).

## IV.    CONCLUSION

For the foregoing reasons, the Court will deny Defendant's Motion to Dismiss Plaintiff's breach of contract and bad faith claims, and will deny Defendant's Motion to Strike paragraphs 16, 20, 21, and 22 from the Complaint. An appropriate Order will follow.

BY THE COURT:

/s/ Chad F. Kenney

**CHAD F. KENNEY, JUDGE**